## THE RULE OF ORDINARY CARE IN CROSSING RAILWAY TRACKS.

Court of Appeals for Stark County.

THE PENNSYLVANIA COMPANY v. CHARLES J. GULLING.*

Decided, February Term, 1916.

*Application of the Rule as to Looking and Listening—Must be Effectively Performed, Rather than Performed at Some Specified Distance from the Tracks—Charge of Court in a Crossing Accident—Whether the Approaching Engine Displayed a Headlight a Proper Question for the Jury.*

1. The looking and listening required at a railway crossing is to be exercised at such proximity to the crossing as to make such looking and listening effective without regard to the distance from the tracks of the person so attempting to cross, and this requires that the looking be so done as to enable the person to see that the way is clear for him to get over the tracks in safety before a train within his range of view of the tracks, going at the usual rate of speed of fast trains, would reach the crossing.

2. Negligence is not shown in the case of one who looked when within forty feet of the crossing, and having a clear view of the tracks for the distance of three-quarters of a mile and neither seeing nor hearing an approaching train, drove upon the crossing in good faith believing he could safely cross, and in so doing was struck by a train.

3. Whether the engine drawing the train which struck plaintiff displayed a headlight, as to which there was affirmative testimony both for and against, and whether a failure to display a headlight was the proximate cause of the accident, was a proper question for determination by the jury.

*Carey & Armstrong* and *A. M. McCarty*, for plaintiff in error.
*Amerman & Mills* and *Lombard, Hext & Wasburn*, contra.

SHIELDS, J.

Proceedings in error are prosecuted herein to reverse a judgment of the Court of Common Pleas of Stark County, wherein

*Motion to require the Court of Appeals to certify its record in this case overruled by the Supreme Court, May 9, 1916.

the defendant in error in a certain action for damages recovered
a judgment against the plaintiff in error for alleged negligence
in operating a train of its cars over a public highway crossing
east of the village of Louisville, in said county, thereby causing
permanent injuries to the defendant in error, as set forth in
his petition filed in the court below.   The principal grounds of
alleged negligence set out in said petition are—

"that said company on November 12, 1914, about 5:30 P. M.,
and after dark, operated its said train of cars in a westerly direc-
tion over a certain public highway crossing, commonly called
the Nickle Plate crossing, east of the village of Louisville, in said
county, when the defendant in error, driving a team of horses
attached to a wagon, attempted to drive upon and over the tracks
of said company at said crossing, which cross said public highway
at said crossing, and before attempting to drive upon and over
said crossing listened for trains in either direction and hearing
none, drove upon said crossing in the effort to cross the same,
when said company's said train of cars approached said cross-
ing at a speed of thirty-five or more miles per hour, without
giving any warning by signal or otherwise, and without display-
ing any headlight on the engine attached to said train of cars,
and did then and there negligently and carelessly, and with
great force and violence run into and against said wagon in
which the plaintiff was riding, demolishing said wagon and its
contents, and with great force and violence threw the plaintiff
out of said wagon and upon the ground, causing him severe,
serious and permanent injuries,"

which are particularly described in said petition, all of which
occurred, as claimed by him, without any fault or negligence
upon his part, to his damage, including the moneys paid for
medical treatment and the value of the wagon, in the sum of ten
thousand dollars.

An answer was filed by said company admitting that its line
of railway crosses said public highway at said crossing where
the plaintiff collided with one of the defendant company's trains,
whereby he sustained some injuries to his person and property,
but not to the extent charged.

It admits that it was its duty to maintain a headlight on its
engine and to give certain signals as it approached said crossing,

all of which duties it says were performed, and subject to said admissions the defendant denies all the other allegations of said petition.

For a second defense the defendant says that if it was negligent in any of the particulars complained of, which it specifically denies, the plaintiff by his own negligent conduct contributed to the proximate cause of his injury by failing to look and listen with ordinary care and prudence for the approach of said train, and by failing to stop and look and listen immediately before driving on said railroad track, and by failing to take reasonable and prudent precautions for his own safety. It denies it was guilty of carelessness, negligence or improper conduct, and says that plaintiff's injuries and damages were caused by the negligence of plaintiff himself.

For reply to the answer of the defendant, the plaintiff makes a general denial of the allegations therein.

After a verdict was rendered for the plaintiff, a motion for a new trial was overruled and judgment was entered on said verdict. Afterward and within the statutory period, a petition in error containing various grounds of error was filed in this court for a review of said judgment.

An examination of the bill of exceptions herein shows that this case is singularly free from objections made and exceptions taken to the admission and rejection of evidence upon the trial, and upon such examination we find the rulings of the trial court in said respects to have been proper.

It was argued that the trial court erred in refusing to give a charge to the jury before argument, on behalf of the plaintiff in error, what is designated in the bill of exceptions as Request No. 1, and which is as follows:

"It was the duty of the plaintiff, Mr. Gulling, just before driving upon the railroad track, to look for the approach of trains. If you find that the headlight on the locomotive in question was lighted and could have been seen by Mr. Gulling, had he looked just before driving upon the railroad track, then there can be no recovery in this case and your verdict must be in favor of the defendant."

This request was refused, and, in our judgment, was properly refused. Reference was made by counsel in argument to the crossing cases of *C., C. & C. R. R. Co.* v. *Crawford, Admr.*, reported in 24 O. S., 631, and to *N. Y., C. & St. L. R. R. Co.* v. *Kistler*, reported in 66 O. S., 326, and the entry in the case of *Wooley* v. *C., H. & D. Ry. Co.*, 90 O. S., 387, was also referred to and commented upon. What the facts were in the last mentioned case we have no means of ascertaining, but testing said request by the rule of law laid down in the first two cases cited, and applying the reasoning of the rule therein stated, we do not think that said request falls within said rule, nor do we think that any fixed, inflexible and absolute rule requiring one to look at any given distance before attempting to cross over a railroad at a public highway crossing has been laid down by our Supreme Court. In the case of *C., C. & C. R. R. Co.* v. *Crawford, Admr., supra,* it is held that—

"1. Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railroad crossing, should use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.

"2. But the omission to use such precaution, by a person injured, will not defeat his action, if, by due diligence in their use, the consequence of the defendant's negligence would not have been avoided.

"3. Nor will the failure to use such precaution be regarded as negligence on the part of the plaintiff, if, under all the circumstances of the case, a person of ordinary care and prudence would be justified in omitting to use them."

Again, in the case of *N. Y., C. & St. L. R. R. Co.* v. *Kistler, supra,* it is held that—

"The looking required before going upon a crossing, should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train within the range of his view of the track, going at the usual rate of speed of fast trains, would reach such crossing."

And, in the case of *Steubenville & Wheeling Traction Co.*, reported in 87 O. S., 187, the judge speaking for the court in that case in commenting upon the action of the court in the case of *C., C. & C. R. R. Co.* v. *Crawford, Admr., supra*, on page 194 says:

"The effect of the entire holding is that the omission to look is not negligence in all cases and *as matter of law*, and it remains the law of Ohio today, though there are a number of decisions of courts of other states, notably Massachusetts, which appear to hold a more rigid rule. It is the Ohio rule respecting the crossing of a steam road, and for a much stronger reason, the rule as to crossing a street railway track."

Hence we think that no absolute rule has been laid down as to the looking required to be done at any given distance before going upon the crossing, but that the limit of the obligation on the part of one about to cross a railroad crossing is to exercise ordinary care *under the circumstances*, and that it should be so done "as to enable the person to get across before a train *within the range of his view of the track*, going at the usual rate of speed of fast trains, would reach such crossing." In other words, the looking and listening required is to be at such proximity to the crossing as to make such looking and listening effective, without reference to any given distance therefrom. We call special attention to the holding in the Kistler case, because it serves to illustrate our view of the law on this feature of the case. Applying the principle just stated, let us inquire what the conduct of the plaintiff below was before attempting to pass over this crossing. It appears that the tracks east of said crossing for three-quarters of a mile were straight and that there was nothing east or west of said crossing for said distance to obstruct a view of said tracks. Turning to the record we find that the plaintiff below testified as follows:

"Q. Now about what time was it in the evening when you came to what we term the Nickle Plate crossing, north of Louisville? A. Well, let us see, we always go by sun time, I call it six o'clock, that would be 5:30.

"Q. Was it dark or not? A. It was dark.

"Q. Now as you approached that crossing how was you driving, just tell the jury? A. As I approached the crossing I was driving along a slow trot.

"Q. Now tell the jury what kind of a crossing that is, that Nickle Plate crossing? A. Well that crossing—the first railroad you come to is the street car line.

"Q. That is the Stark Electric? A. Stark Electric: and my recollection is that there was a street car, not a regular street car, there wasn't any lights in it, going east; I was coming this way.

"Q. Which direction was you going from Louisville now? A. North.

"Q. Street car going east? · A. I was going this way and the street car was going that way, and I was not sure that I could cross ahead of that car so I pulled in my horses to a stop.

"Q. About how close to the street car track? A. Of the street car track of possibly 20 feet, because I had a lot of confidence in this team, they wasn't afraid of anything of that kind.

"Q. Go ahead and tell what you next did? A. Then after this street car was past I started my horse on a walk, they walked across the street car track, and I leaned forward, I was sitting possibly like this (indicating) in my seat (indicating sitting forward on the seat, leaning forward); I leaned out of the front of the wagon and looked both ways to see if there was anything coming on the railroad track.

"Q. How many tracks is there there on that railroad crossing? A. Two tracks.

"Q. Double track? A. Double track. ·

"Q. How far is the closest track to the street car track; what is the distance approximately between those tracks? A. 65 to 70 feet.

"Q. Do they run parallel to each other at that crossing? A. Yes, sir.

"Q. How does the road that you was traveling strike the crossing, does it strike it perpendicular or at an angle? A. It strikes it at a sharp angle.

"Q. What you call an acute angle or what you call a diagonal? A. I would call it a diagonal.

"Q. Now, then, Mr. Gulling, just go forward and tell the jury what you did as you cross that crossing and what occurred? A. Well, after I crossed the street car track I leaned forward to look out for a railroad train; and I looked both ways twice at least, and when the team was on the railroad, the last time I

looked east, there is something seemed to come down on me—looked like a black mountain; I had a clear view, I looked around the front of that curtain, and the next thing they struck me; there was no use to reach for the whip; I had the whip in the socket, never used it, I had it for an emergency; I leaned forward and give the lines on my horses, give a command—I don't know what you call it—anyway they answered me and leaped forward and the train got the rear end of that wagon."

It thus appears that said request wholly eliminated the existing conditions, which were proper to be made known to and considered by the jury in determining whether or not the plaintiff was negligent before attempting to drive upon and over said crossing. If he looked when within forty feet of the track, as testified to by him, to see whether or not any train was approaching said crossing, and so looking he had a clear and unobstructed view of said company's tracks for a distance of three-quarters of a mile, and neither hearing nor seeing any train approaching said crossing, he then drove upon said crossing for the purpose of crossing over the same, and believing and having good reason to believe that he could safely cross, and when attempting to cross was struck by said company's train of cars, as the evidence here shows, such looking under such circumstances would not be negligence as a matter of law as would prevent a recovery.

It is contended on behalf of the plaintiff in error that the court below erred in its general charge to the jury upon the subject of displaying a headlight on the engine of said company. Section 8945-1 of the General Code provides that—

"Every railroad corporation operating a railroad or a part of one in this state, shall equip each of its locomotives with a headlight of such construction, and with sufficient candle power to render plainly visible at a distance of not less than three hundred and fifty feet in advance of such engine, whistling posts, land marks, and other warning signals," etc.

In its answer said company admits—

"That it was its duty to maintain a headlight on its engine, to give certain signals as it approached said crossing, and it avers that all of its duties in the premises were fully performed."

As if adopting said admission said court instructed the jury as follows:

"The law requires, and counsel for defendant concedes, that the defendant must display, after dark, an adequate headlight on its locomotive, and that failure to do so is negligence. Now whether the defendant on the occasion in question failed in its duty in that respect, and if so whether such failure was the proximate cause of the plaintiff's injuries, are questions of fact for you to determine."

While perhaps it is true that every failure to perform a duty imposed by statute is not negligence as a matter of law, in this instance the statutory requirement appears to have been conceded, and the ultimate question of whether or not said company failed to display a headlight on its engine on the night in question, and if so, whether or not such failure was the proximate cause of the plaintiff's injuries, was submitted to the jury to determine. We find no prejudicial error in said charge in this respect.

It is also urged that said court erred in its charge to the jury in respect to the statutory signals required, when negligence in this respect was not averred in the plaintiff's petition. An examination of said petition shows that it was drawn with no little care and indeed with greater particularity of statement and detail than is required under the existing system of code pleading in this state. Quoting from said petition on this subject, it recites that—

"Yet the said defendant, well knowing its duties in the premises as aforesaid, did on, to-wit: the 12th day of November, 1914, negligently and carelessly run its said west bound freight train, then and there being drawn by an engine propelled by steam, at, to-wit: 5:30 oclock in the afternoon, upon and over the track of said defendant and approached the said crossing at the intersection of the said tracks with the said highway, while it was dark, and negligently and carelessly failed to give due and timely warning of the approach of said train, engine and cars at a sufficient distance from the said highway crossing to give the said plaintiff, who was then and there approaching and attempting to cross the said track of the said defendant, in the exercise of

due care and caution for his own safety, and without fault or negligence on his own part, reasonable opportunity and time so that the said plaintiff could stop and avoid going upon and over the said tracks, and negligently and carelessly failed to ring the bell on the said engine, and negligently and carelessly failed to sound the whistle as a warning to the said plaintiff, and negligently and carelessly failed to give any warning or signal whatever of the approach of said engine and train as the said train approached and ran over the said crossing.''

''In an action founded upon negligence, the petition should state the acts of commission or omission which the plaintiff claims to have caused the injury; and that statement being made, it is sufficient to aver that such acts were carelessly or negligently done, or omitted.'' *R. R. Co.* v. *Kistler, supra.*

It is also argued that the verdict of the jury was clearly against the weight of the evidence and contrary to law. Counsel for plaintiff in error both in their brief submitted and in oral argument, contend that the decided weight of the evidence is that the headlight on the engine on the night in question was lighted at the time of said accident. That there is a marked conflict in the testimony of the witnesses testifying upon this feature of the case is apparent from a reading of the record, some of them giving positive testimony while that of others was negative in character. We recognize the rule that ''all other things being equal, courts are naturally disposed to give more weight to affirmative than to negative testimony; to the witnesses who saw than to the witnesses who did not see,'' but when affirmative testimony is given as to the existence of a certain fact, both by the plaintiff and defendant, it then becomes a question of fact to be determined by the jury, under proper instructions by the trial court. In this instance there was such testimony before the jury tending to sustain the contention of both the plaintiff and the defendant in the respect mentioned, and it then became a question to be considered by the jury under instructions as indicated. *Gibbs* v. *Village of Girard,* 88 O. S., 34.

In the light of the record before us, we are of the opinion that the jury were fully justified in finding that the defendant in er-

ror was not guilty of contributory negligence, or that such negligence on his part was the proximate cause of his injuries, and that the verdict of the jury was not against the manifest weight of the evidence or contrary to law.

Finding no error prejudicial to the plaintiff in error in the record, and further finding upon the whole case that substantial justice has been done between the parties hereto by the verdict returned by the jury and the judgment entered in the court below, the judgment of the court of common pleas will be affirmed.

POWELL, J., and HOUCK, J., concur.